IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| ELM ONE CALL LOCATORS, INC., and ONE CALL LOCATORS, LTD., <br><br> Plaintiffs, <br><br> v. <br><br> MIDCONTINENT COMMUNICATIONS, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) No. 21-cv-1176 |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on the Motion to Dismiss (d/e 11) filed by Defendant Midcontinent Communications. For the reasons stated below, Defendant's Motion is GRANTED. Plaintiffs' Amended Complaint (d/e 4) is DISMISSED for lack of personal jurisdiction.

### I. BACKGROUND

Plaintiffs ELM One Call Locators, Inc. ("One Call Locators") and One Call Locators, Ltd., d/b/a ELM Locating & Utility Services ("ELM") are in the business of locating underground utilities.

Plaintiffs have a longstanding contractual relationship with Defendant Midcontinent Communications ("Midcontinent"), a company that provides cable television, internet, and telephone services to customers in North Dakota, South Dakota, Minnesota, Kansas, and Wisconsin. ELM is a Montana corporation with its principal place of business in Illinois, while One Call Locators is an Illinois corporation with its principal place of business in Illinois. ELM is a wholly owned subsidiary of One Call Locators. Midcontinent is a general partnership organized under the laws of South Dakota, with its principal place of business in Minnesota.

ELM and Midcontinent entered into a "Services Agreement" on June 12, 2000. Under the Services Agreement, ELM is responsible for "[l]ocating [Midcontinent's] underground utilities and facilities (upon request by [Midcontinent]), prior to excavation." D/e 1, exh. A, p. 1. When a third party intends to dig in a given area, the third party places a call to ELM. ELM then locates and marks the locations of any underground utility lines owned by Midcontinent in the specified area so that the third party can excavate without damaging the lines. ELM charges Midcontinent for these services

via invoice.  ELM's invoices are prepared in Peoria, Illinois and sent to Midcontinent in Bismarck, North Dakota.  Midcontinent makes monthly payments to ELM via wire transfer to ELM's bank, which is located in Illinois.

If ELM inaccurately identifies or improperly marks the location of a buried cable, and ELM's mistake causes a third party to damage the cable while digging, the Services Agreement requires ELM to pay Midcontinent "a flat fee of $200.00 for each damaged mainline cable, and full time and material costs for cut fiber lines." Id., p. 8.  When Midcontinent determines that an error committed by ELM has caused damage to one of Midcontinent's lines, Midcontinent sends a damage invoice to ELM's headquarters in Peoria, Illinois.  ELM then processes the damage invoice, prints a payment check, and mails the payment check to Midcontinent's North Dakota address.

This action arises out of a disagreement over damage invoices sent to ELM by Midcontinent between August 2011 and April 2021.  According to ELM, ELM accepted and paid damage invoices totaling $108,261.20 "in good faith" but subsequently learned that

Midcontinent had overcharged ELM. ELM asserts that it paid Midcontinent $82,324.87 more than was required under the Services Agreement. ELM has refused to pay an additional $115,327.27 that Midcontinent demanded as compensation for seven incidents in 2019 and 2020 in which third parties damaged Midcontinent's utility lines.

On June 21, 2021, Plaintiffs filed a two-count Complaint (d/e 1). Because the original Complaint did not identify Midcontinent's citizenship, as is required to establish the existence of diversity jurisdiction, U.S. Magistrate Judge Jonathan Hawley directed Plaintiffs to file an amended complaint. Plaintiffs filed their Amended Complaint (d/e 4) on June 30, 2021. In Count I of the Amended Complaint, Plaintiffs allege that Midcontinent breached the Services Agreement by overcharging ELM. In Count II, Plaintiffs allege that the amount ELM currently owes to Midcontinent is "substantially lower" than the $115,327.27 that Midcontinent has demanded and request a declaration setting forth the amount that ELM actually owes.

Midcontinent has filed a Motion to Dismiss (d/e 11) pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure. Midcontinent argues that this Court lacks personal jurisdiction over Midcontinent and that venue is improper in this district. Plaintiffs have filed an Opposition (d/e 13) to Midcontinent's Motion, and Midcontinent has filed a Reply (d/e 17) to Plaintiffs' Opposition.

## II. ANALYSIS

A plaintiff is not required to allege the existence of personal jurisdiction in his complaint. Steel Warehouse of Wisconsin, Inc. v. Leach, 154 F.3d 712, 715 (7th Cir.1998). Once a defendant has moved to dismiss the complaint for lack of personal jurisdiction under Rule 12(b)(2), however, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 782 (7th Cir. 2003). In evaluating a motion to dismiss under Rule 12(b)(2), courts may consider and weigh affidavits and other evidence submitted by the parties. Curry v. Revolution Lab'ys, LLC, 949 F.3d 385, 393 (7th Cir. 2020). Where, as here, no evidentiary hearing has been held,

the plaintiff "need only make out a prima facie case of personal jurisdiction." Hyatt Int'l Corp. v. Coco, 302 F.3d 707 (7th Cir. 2002). In determining whether the plaintiff has satisfied the prima facie standard, courts accept the plaintiff's factual assertions as true and resolve all factual disputes in the plaintiff's favor. Purdue Rsch., 338 F.3d at 782. However, any facts offered by the defendant that do not conflict with the plaintiff's claims or the available evidence are also accepted as true. Curry, 949 F.3d at 393.

In cases where subject-matter jurisdiction is based on diversity of citizenship, a federal court in a given state may exercise personal jurisdiction over a defendant if a state court in the same state could do so. See Hyatt, 302 F.3d at 713. Illinois courts can exercise jurisdiction "to the full extent permitted by the Fourteenth Amendment's Due Process Clause," so the issue of whether Midcontinent can be made to litigate in this Court depends on whether the exercise of jurisdiction over Midcontinent would deprive Midcontinent of due process of law. Curry, 949 F.3d at 393.

Plaintiffs have not asserted that Midcontinent is subject to the general jurisdiction of Illinois courts, so the question to be answered is whether this Court may exercise specific personal jurisdiction over Midcontinent. Specific jurisdiction requires: (1) that the defendant's contacts with the forum state show that the defendant "purposefully availed [itself] of the privilege of conducting business in the forum state or purposefully directed [its] activities at the state"; (2) that the plaintiffs' alleged injuries arise out of or relate to the defendant's forum-related activities; and (3) that the exercise of personal jurisdiction over the defendant will "comport with traditional notions of fair play and substantial justice." Lexington Ins. Co. v. Hotai Ins. Co., Ltd., 938 F.3d 874, 878 (7th Cir. 2019) (quoting Felland v. Clifton, 682 F.3d 665, 673 (7th Cir. 2012)) (alterations in original).

Midcontinent is not registered to do business in Illinois, has no physical presence in Illinois, and derives no business revenue from operations in Illinois. The only alleged contacts between Illinois and Midcontinent are that: (1) Midcontinent sent invoices to ELM's Illinois headquarters, which Midcontinent processed and

paid from Illinois; and (2) Midcontinent made regular wire-transfer payments to ELM's Illinois-based banks. However, merely sending payments to and receiving payments from a state does not amount to "purposefully availing" oneself of the privilege of conducting business in that state. In <u>Asset Allocation & Management Co. v. Western Employees Ins. Co.</u>, 892 F.2d 566 (7th Cir.1989), the defendant mailed checks to the Plaintiff's office in Illinois and contacted the office by telephone and several times by mail to inquire and complain about the parties' dispute. <u>Id.</u> at 569 (Posner, J.). The contract giving rise to the dispute was signed in California and negotiated in California, and the services provided for in the contract were performed by the defendant in California. The district court found personal jurisdiction over the California-based defendant, but the Seventh Circuit reversed. Judge Posner concluded that the California defendant was not subject to the personal jurisdiction of Illinois courts, reasoning that "[t]he question is whether [the defendant] was transacting business in Illinois, not whether [the plaintiff], the Illinois resident, was" and that "[i]f the district court's finding of personal jurisdiction is

correct, the breach of <u>any</u> contract between a resident of Illinois and a nonresident is actionable in an Illinois court." Id. at 569–70.

Several district courts in the years since <u>Asset Allocation</u> have concluded that sending or receiving payments to or from a company in Illinois, without more, does not render a defendant subject to the personal jurisdiction of Illinois courts. <u>See, e.g.</u>, <u>Tri-Meats, Inc. v. NASL Corp.</u>, 2001 WL 292621 (N.D. Ill. Mar. 26, 2001) (finding that receiving invoices from Illinois office of plaintiff and sending wire transfers to plaintiff was "not enough" to establish specific personal jurisdiction over out-of-state defendant); <u>FCNBD Mortg. Invs., Inc. v. CRL, Inc.</u>, 2000 WL 1100332, at *4 (N.D. Ill. Aug. 4, 2000) (finding that initiating a wire transfer to an Illinois bank from another state did not subject defendant to Illinois courts' personal jurisdiction, where contract was not signed, formed, or performed in Illinois); <u>PNC Bank, Nat'l Ass'n v. Rising Sun Holdings, Inc.</u>, 2019 WL 10372778, at *1 (N.D. Ill. Mar. 29, 2019) ("[W]ire transfers from an Illinois account are insufficient to establish personal jurisdiction over the defendants."). In breach of contract disputes involving an out-of-state party's contract with an Illinois party, courts instead

ask where the contract negotiations were initiated and where the contract was negotiated, executed, and performed to determine whether the out-of-state party could reasonably have anticipated being haled into court in Illinois. Ameritech Services, Inc. v. SCA Promotions, 2000 WL 283098, at *3 (N.D. Ill. March 6, 2000).

Here, the Services Agreement attached to Plaintiff's Complaint was executed in the year 2000, between One Call Locators, Ltd., which at the time was a Montana company with its principal place of business in Montana, and Midcontinent, which was then a South Dakota company with its principal place of business in Minnesota. D/e 1, exh. A, p. 1. Plaintiffs have not alleged, and there is no reason to believe, that the Services Agreement was negotiated or executed in Illinois. The locating and marking services provided for in the Services Agreement are performed in North Dakota. The only connection between ELM's claims and the state of Illinois is that at some unspecified point in time in or after 2003, ELM moved its headquarters to Illinois, and that since that time Midcontinent has occasionally sent payments and invoices to and received invoices and payments from ELM's Illinois headquarters. While Plaintiffs

have produced a number of subsequent agreements modifying the original Services Agreement, none of the modifications contemplates performance outside of North Dakota, and the address listed for ELM on each modification is in Missoula, Montana. See d/e 14, pp. 21–30. Plaintiffs have not alleged any connection between any of the modifications and Illinois, other than that ELM's headquarters were located in Illinois when some of the modifications were executed.

Plaintiffs argue that this case is like Madison Consulting Group v. South Carolina, 752 F.2d 1193 (7th Cir. 1985). However, that case is readily distinguishable. In Madison Consulting, most of the work contemplated by the contract was to take place in the forum state, and the defendant initiated contact with the plaintiff by placing a call to the plaintiff's headquarters in the forum state. Neither of those connections apply in this case, where the contract, which concerns projects to be undertaken in North Dakota, was negotiated and executed entirely outside of Illinois.

Northern Grain Marketing, LLC v. Greving, 743 F.3d 487 (7th Cir. 2014) is a more appropriate comparator. In that case, the

Seventh Circuit found that a Wisconsin defendant was not subject to the personal jurisdiction of Illinois courts because his only contractual duty was to grow grain in Wisconsin and deliver it to a grain elevator in Wisconsin, while the Illinois-based plaintiff paid him for doing so. The Seventh Circuit observed that "the contract was performed entirely in Wisconsin" and affirmed the district court's dismissal for lack of jurisdiction. Id. at 494.

The only contacts that Plaintiff has alleged between Midcontinent and Illinois involve the sending and receiving of invoices and payments to and from ELM. These payments were made in connection with the Services Agreement, which was negotiated, executed, and performed outside of Illinois. These contacts, without more, are not enough to justify the exercise of personal jurisdiction over Midcontinent.

### III. CONCLUSION

For the reasons stated above, the Motion to Dismiss (d/e 11) filed by Defendant Midcontinent Communications is GRANTED. Plaintiffs' action is DISMISSED WITHOUT PREJUDICE for lack of personal jurisdiction over the Defendant. Because any amendment

would be futile, leave to amend is not granted. The Clerk is DIRECTED to enter judgment. Any pending motions in this matter are DENIED as moot, any pending deadlines are TERMINATED, and any scheduled settings are VACATED. This case is CLOSED.

**ENTERED: April 18, 2022**

**FOR THE COURT:**

*/s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**